# IN THE UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., a Georgia corporation,<br><br>      Plaintiff,<br><br>v.<br><br>DYNAMIC SPORTS NUTRITION, LLC d/b/a ANABOLIC RESEARCH, a TEXAS limited liability company; and BRIAN CLAPP, an individual,<br><br>      Defendants.<br>_____ / | )<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>VERIFIED COMPLAINT</u>

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), by and through the undersigned counsel of record, and for its Complaint against the Defendants Dynamic Sports Nutrition, LLC ("DSN") and Brain Clapp ("Mr. Clapp," collectively DSN and Mr. Clapp shall be referred to as "Defendants"), states as follows:

## INTRODUCTION

1.     Hi-Tech is the owner of the incontestable registration for DIANABOL®
for dietary supplements.  *See* Exhibit 1.  DSN, at the direction of Mr. Clapp, willfully
infringed Hi-Tech's mark by its use of D-ANABOL 25 for dietary supplements
("Infringing Products").  Defendants' actions are designed to and will cause
confusion amongst the consuming public and constitute trademark infringement and
unfair competition under the Lanham Act and violation of Deceptive Trade Practices
Act and unfair competition under Georgia law.

## THE PARTIES

2.     Hi-Tech is a corporation organized and existing under the laws of the
State of Georgia, with its principal place of business located at 6015-B Unity Drive,
Norcross, Georgia 30071.  Hi-Tech sells, distributes, and manufactures high quality
dietary supplement products in the State of Georgia and throughout the United
States.

3.     Defendant DSN is a limited liability company d/b/a/ Anabolic Research
and is organized under the laws of the State of Texas whose registered agent is
Jeffrey E. Sher located at 2727 Allen Pkwy, Suite 900, Houston, Texas 77019.  Upon
information and belief, DSN sells, distributes, and markets its products, including

the Infringing Products at issue, in the State of Georgia, in this District, and throughout the United States.

4.     Mr. Clapp is an individual and citizen of Texas and may be served at 1240 Wilson Ct., Humble, Texas 77396.  Upon information and belief, Mr. Clapp is the chief executive officer, owner, and president of DSN.   Upon information and belief, Mr. Clapp authorizes, participates in, directs, controls, causes, ratifies, and/or is the moving force behind the selection and sale and distribution of the Infringing Products and/or is personally sells the Infringing Products.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question), 15 U.S.C § 1121 (Lanham Act claims), 28 U.S.C. § 1338 (trademark and unfair competition claims), 28 U.S.C § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1332 (diversity), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

6.     Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Hi-Tech's claims arising from the laws of the State of Georgia as those claims are substantially related to those causes of action over which the Court has original jurisdiction.

7.     This Court may exercise personal jurisdiction over the Defendants pursuant to O.C.G.A. §9-10-91 because one or more of the Defendants are doing business in this judicial district and/or have committed tortious acts within this judicial district including unfair competition, trademark infringement, mail and wire fraud as a part of a Georgia RICO violation among other wrongful and unlawful acts. This Court therefore has jurisdiction over the Defendants pursuant to the provisions of the Georgia long-arm statute.

8.     This Court also has personal jurisdiction over Defendants because they purposefully directed and targeted their activities, as set forth herein, at Georgia resident Hi-Tech, and the effects of those activities arose in Georgia.

9.     By way of further example and without limitation, Defendants have purposefully and voluntarily placed the Infringing Products and fraudulent supplements into the stream of commerce with the knowledge, understanding, and expectation that such Infringing Products would and will be purchased in the Northern District of Georgia, and the products were and are actually purchased in the Northern district of Georgia.

10.     Venue is proper under 28 U.S.C. § 1391 (b) in that one or more of the Defendants are doing and transacting business within this judicial district, and have

committed the tortious acts complained of herein in this judicial district of the State of Georgia.

## FACTUAL BACKGROUND

### I.    HI-TECH AND DIANABOL®

11.    Hi-Tech is a producer of high quality dietary supplements, including numerous products designed for muscle and body building, such as testosterone boosters, muscle-gainers, muscle preservation products, and legal hormone boosters.

12.    One of Hi-Tech's products is DIANABOL®, a muscle preservation dietary supplement for consumers seeking to gain muscle.

13.    Hi-Tech is the owner, by way of assignment, of USPTO Registration No. 3,378,354 for the mark DIANABOL® in international class 005 for "dietary supplements, excluding anabolic steroids" with a registration date of February 5, 2008.  A copy of the certificate of registration is attached hereto as "Exhibit 1."

14.    The DIANABOL® trademark and the resulting registration is incontestable, valid, existing and in full force and effect.

15.    The DIANABOL® trademark is associated exclusively with Hi-Tech for use with dietary supplements.  Hi-Tech first used the mark on or about March 31, 2002 and has used its mark in interstate commerce continuously since this date.  As a result of its continued use, marketing of its products and other business

generation efforts to promote the DIANABOL® trademark, the DIANABOL® trademark has become well-known in commerce to identify Hi-Tech's products and business. Consequently, Hi-Tech has developed substantial recognition among the consuming public for its high quality products sold under its DIANABOL® trademark and enjoys extensive goodwill associated with the DIANABOL® trademark. Furthermore, consumers throughout the United States now recognize the DIANABOL® trademark as identifying a single source of Hi-Tech's high quality dietary and nutritional supplements.

16.    Hi-Tech distributes, markets and sells DIANABOL® in the State of Georgia and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers.

17.    Hi-Tech has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its DIANABOL® product.

18.    Hi-Tech markets and promotes its dietary supplements, including DIANABOL®, through many types of advertising media including printed brochures and flyers, magazine advertisements, web pages, online advertisements, and distributors' catalogs. As a result, Hi-Tech's DIANABOL® product and brand has established substantial and valuable goodwill among consumers of dietary supplements.

## II.    DSN'S ATTEMPTED REGISTRATION OF "D-ANABOL"

19.    Defendants were aware of Hi-Tech and its DIANABOL® registration but, nevertheless, on March 29, 2011, attempted to circumvent Hi-Tech's incontestable, registered DIANABOL® rights, by applying to register D-ANABOL 25 as a trademark for dietary supplements, which was assigned U.S. Serial No. 85/280,036.

20.    On June 28, 2011, the PTO refused registration of the D-ANABOL 25 application, citing Hi-Tech's DIANABOL® registration against said application, and attached a copy of Hi-Tech's DIANABOL® registration to its refusal.  Exhibit 2, p. 8.

21.    In doing so, the PTO found that the D-ANABOL 25 and DIANABOL® trademarks were similar in sound and appearance, that they created the same overall commercial impression, and that they identified the same or substantially similar products.  *Id.*, p. 3.

22.    While Defendants responded to the PTO's rejection, on May 1, 2012, the PTO issued its "final" rejection of Defendants' trademark application, again citing confusing similarity between the D-ANABOL 25 and DIANABOL® trademarks.  Exhibit 3.

23.    The PTO found there was a likelihood of confusion between Hi-Tech's

DIANABOL® and DSN's D-ANABOL trademarks, stating in part:

> Online literature and/or advertisements for applicant's product [DSN's
> D-ANABOL] demonstrate that applicant's and registrant's [Hi-
> Tech's] goods are: (1) marketed through the same channels; (2)
> directed to the same potential customers; and (3) even promoted as
> comparable competing products wherein they provide, in part, 'If you
> are looking to buy Dianabol …online, our D-adabol 25 is exactly what
> you need.

*Id*., p. 3.

24.    The PTO further stated that, "[t]he dominant feature of the applicant's

mark is nearly identical in appearance to registrant's mark.  The letter I is merely

replaced with a hyphen."  *Id*., p. 4.

25.    The PTO also found that the term D-ANABOL 25 is the phonetic

equivalent of DIANABOL®, and that the term "25" would (incorrectly be perceived

as the milligram dosage of DSN's goods.  *Id.*

## III.    DEFENDANTS' USE OF THE "D-ANABOL 25" TRADEMARK AND SALE OF THE INFRINGING PRODUCTS

26.    Defendants have used and continue to use the unregistered, infringing

trademark "D-ANABOL 25" to sell its D-ANABOL 25 product.

27.    The trademark "D-ANABOL 25" is confusingly similar to Hi-Tech's DIANABOL® trademark in that the Defendants' are using a near identical match to Hi-Tech's incontestable, registered trademark.

28.    The Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product as both products are muscle building dietary supplements and the products directly compete against each other and both products travel in the same trade channels.

29.    The Infringing Products are advertised in the same media as Hi-Tech's DIANABOL® products, namely websites and muscle or fitness magazines.

30.    Defendants    own    and    operate    the    following    websites: www.Anabolics.com;   www.DynamicSportsNutrition.com;   www.Dianabol.com; www.BuySteroids.com;  www.Steroid.com;  and  RoidStore.com.   Barry Clapp is listed as the registered agent for each of these domains and may own and operate additional infringing domains and websites unknown to Hi-Tech.

31.    Defendants' website www.Anabolics.com is an ecommerce site and serves as an instrument to confuse and deceive consumers into thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product.

32.    Defendants'    website    www.DynamicSportsNutrition.com    is    an ecommerce site and serves as an instrument to confuse and deceive consumers into

thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product.

33.    Defendants' website www.Dianabol.com serves as an instrument to confuse and deceive consumers into thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product under the guise of acting as educational website dedicated to Hi-Tech's DIANABOL® product while providing links to purchase the Infringing Products.

34.    Defendants' website www.BuySteroids.com serves as a redirection page which directs consumers to Defendants' website www.Anabolics.com intended to confuse and deceive consumers into thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product.

35.    Defendants' website www.Steroid.com serves as an instrument to confuse and deceive consumers into thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product under the guise of acting as educational website dedicated to general steroid education while providing links to purchase the Infringing Products.

36.    Defendants' website www.RoidStore .com serves as a redirection page which directs consumers to Defendants' website www.Anabolics.com intended to

confuse and deceive consumers into thinking that the Infringing Products are similar to or the same as Hi-Tech's DIANABOL® product.

37.     As found by the PTO, consumers are likely to be confused between Hi-Tech's DIANABOL® product and DSN's D-ANABOL 25 product.

38.     Consumers are also confused and/or likely to be confused into associating Hi-Tech's DIANABOL® trademark with Defendants' and their Infringing Products, which are inferior dietary supplements.

39.     Upon information and belief, Defendants were aware of Hi-Tech's DIANABOL® trademark when they adopted and began using the Infringing Products name, and did so with willful disregard for the rights of Hi-Tech and the intent to deceive and confuse consumers.

40.     Upon information and belief, Defendant Mr. Clapp participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection of infringing trademark D-ANABOL 25 and circulation of the Infringing Products.

41.     Defendants' sale of the Infringing Products without Hi-Tech's permission damages the value of Hi-Tech's DIANABOL® mark and the goodwill and high quality reputation of Hi-Tech branded products.

42.     On information and belief, Defendants will continue to undertake such unlawful activities which infringe Hi-Tech's trademark rights unless enjoined by this Court.

43.     As a consequence of these activities and the impairment to Hi-Tech's goodwill, reputation and customer base, Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from committing further infringing acts.

IV.     **HI-TECH'S DISCOVERY OF DSN'S INFRINGEMENT**

44.     Hi-Tech recently became aware that Defendants have previously sold and are currently selling and promoting nutritional and dietary supplements under the purported trademark D-ANABOL 25.

45.     On September 10, 2015, the CEO of Hi-Tech, Jared Wheat ("Wheat"), sent an email to Mr. Clapp inquiring if Mr. Clapp had any affiliation with the website www.Anabolics.com.   Mr. Clapp acknowledged that he owned and operated www.Anabolics.com and its infringing D-ANABOL 25 product.   Wheat was surprised because for a period of time prior to this exchange, Mr. Clapp had represented himself to Wheat as a friend and industry ally interested in protecting and enforcing trademark rights.

46.     Indeed, three days after the PTO's final rejection of the D-ANABOL 25 trademark, Mr. Clapp had reached out to Wheat to notify Wheat of entities infringing on Hi-Tech trademarks, including Hi-Tech's DIANABOL® trademark, and to purportedly assist Mr. Wheat with protection of Hi-Tech's trademarks.  Mr. Clapp never mentioned that he and DSN were infringing on a Hi-Tech trademark, or disclose that Defendants owned and operated any website aside from probodybuilding.com, which did not offer the Infringing Products for sale.  *See, e.g.,* E-mail from Brian Clapp to Hi-Tech Customer Service (May 4, 2012) (attached hereto as "Exhibit 4"); E-mail chain between Brian Clapp and Jared Wheat (May 8-10, 2012) (attached hereto as "Exhibit 5"); E-mail chain between Brian Clapp and Jared Wheat (May 17 & 22, 2014) (attached hereto as "Exhibit 6"); E-mail chain between Brian Clapp and Jared Wheat (May 30, 2014) (attached hereto as "Exhibit 7").

47.     Mr. Clapp's initiation of a relationship with Wheat and his communications to Wheat were designed to distract Wheat and Hi-Tech from Defendants' trademark infringement and unlawful scheme as set forth herein, to ascertain if and when Hi-Tech would discover said trademark infringement and unlawful scheme, and/or with the hope that Hi-Tech would not pursue legal recourse for said trademark infringement and unlawful scheme in the event Hi-Tech

discovered same.  Mr. Clapp's "assistance" to Mr. Wheat was also aimed at having Hi-Tech clear the market of product names that could be confused with, not only Hi-Tech's DIANABOL® trademark, but also Defendants infringing D-ANABOL 25 trademark.

48.    On September 11, 2015 Wheat sent Mr. Clapp an email on behalf of Hi-Tech informing Mr. Clapp of Hi-Tech's intention to vigorously protect their intellectual property rights in the incontestable DIANABOL® trademark against the infringement by DSN's D-ANABOL 25 product.  Mr. Clapp responded and asserted that his date of first use of 2005 preceded Hi-Tech's date of first use while at the same time acknowledging the likelihood of confusion.  Wheat responded and shared that Hi-Tech's date of first use was in fact, March 31, 2002 and also sent a cease and desist letter to DSN giving DSN one week to cease sales of its products using the D-ANABOL 25 trademark.

49.    As of the date of this filing, however, DNS continues to sell products using the "D-ANABOL 25" trademark.

## V.    DSN'S FALSE AND MISLEADING ADVERTISING PRACTICES

50.    In addition to selling its D-ANABOL 25 product, DNS sells other dietary supplements including DECA 200, TREN 75, and Pituitary Growth Hormone.

14

51.    Defendants' D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth Hormone products directly compete with Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products in the dietary supplement sub-markets of testosterone boosters, muscle-gainers, muscle preservation products, and legal hormone boosters.

52.    In attempt to gain an advantage in these markets, Defendants falsely and misleadingly advertised the D-ANABOL 25, DECA 200, and TREN 75 products by comparing and/or equating said products to anabolic steroids.

53.    In attempt to gain an advantage in these markets, Defendants falsely and misleadingly advertised the Pituitary Growth Hormone product by comparing and/or equating said product to human growth hormone (HGH).

54.    Upon information and belief, Defendants market, advertise, distribute, and sell DSN's D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth Hormone products throughout the State of Georgia, in this District, and across the United States.

55.    Upon information and belief, Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the false advertising, in violation of the Lanham Act and the Food, Drug, and Cosmetics Act ("FDCA").

### A.   DEFENDANTS' FALSE AND MISLEADING ADVERTISING OF D-ANABOL 25

56.   In marketing and advertising the D-ANABOL 25 product to consumers on their websites identified herein, Defendants' have made false and misleading claims comparing and/or equating the D-ANABOL 25 product to anabolic steroids.

57.   For instance, on Steroid.com, Defendants state:

Buy Steroids Legally without a Prescription: It is an option that is very rare and there are very few avenues in this regard but they do exist; you can buy steroids without a prescription legally and safely …  By visiting the banner up above you will find one of these outlets and while you may not be able to find a $10 bottle of Dianabol what you will find are products that have been researched, manufactured in a sterile environment that possess all the anabolic qualities you're after and to top it off, they do so legally.  For those who have never supplemented with anabolic steroids before, prepare to be amazed …

(http://www.Steroid.com/buy-steroids.php, last accessed September 18, 2015).

58.   The steroid.com webpage containing this statement offers D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth hormone for sale.  (*Id*.)

59.   Additionally, on BuySteroids.com, a website owned and operated by Defendants, Defendants have also stated:

On a milligram for milligram basis, powerful **D-ANABOL 25**® (Metandesenolone) is considered the strongest oral anabolic available! It's extremely potent chemical structure provides rapid (near instant) gains that translate into massive SIZE and ridiculous STRENGTH. This super oral can be taken alone in "D-ANABOL only" cycles for amazing solo results, or stacked at the beginning of bulking cycles to swiftly and powerfully 'kick start' your new muscle production.

16

…

Buy D-ANABOL 25 aka Metandesenolone at BuySteroids.com.

(http://www.buysteroids.com/categories/All-Products/D-Anabol-25/, as of at

least May 14, 2014) (boldface original).

60.    Defendants' product label for D-ANABOL 25 also reads "D-ANABOL

25 (metandesenolone)".

61.    There is, however, no such chemical as "Metandesenolone," rendering

this statement, and the representation that D-ANABOL 25 contains 25 milligrams

of "Metandesenolone" (or any particular substance) false and misleading.

62.    The D-ANABOL 25 product does not contain any ingredient called

"Metandesenolone."   Defendants simply named the product's proprietary blend

"Metandesenolone" to confuse and mislead consumers.

63.    Dianabol (Methandrostenolone) is an anabolic steroid listed as a

Schedule III drug by the Controlled Substances Act, and a prescription drug under

the Food, Drug, and Cosmetics, Act ("FDCA").

64.    The difference between the spelling of "Metandesenolone" and

"Methandrostenolone" is all but imperceptible.  This deception is entirely consistent

with the deception employed in the name "D-ANABOL 25," which is designed to

17

confuse Hi-Tech customers, violate Hi-Tech's trademark, and profit from consumer deception combined with the trademark infringement.

65.     Moreover, on Steroid.com, Defendants set forth an extensive description of the chemical Dianabol with a banner advertising the D-ANABOL 25 product offering "Discreet Shipping and Billing … No prescription.  No injections." Clicking on this banner takes the consumer to anabolics.com, where Defendants offer D-ANABOL 25 for sale. (https://www.steroid.com/Dianabol.php, last accessed September 18, 2015).

66.     In making aforementioned statements, and by using the term "Metandesenolone," Defendants are deliberately attempting to mislead consumers in to believing they are purchasing Methandrostenolone or its equivalent.

67.     Contrary to Defendants' representations stated herein, the D-ANABOL 25 product contains only herbal extracts, a nucleoside with no muscle building effects, and a small amount of an amino acid.  Further, the D-ANABOL 25 prdocut does not contain 25 milligrams of any substance.

68.     Thus, the D-ANABOL 25 product contains no ingredients remotely comparable to the chemical Methandrostenolone, and the D-ANABOL 25 product could not have any effects equivalent or similar to that of Methandrostenolone, rendering Defendants' statements false and misleading.

18

69.     Further, in using the ® federal registration symbol, Defendants also falsely and misleadingly represented that D-ANABOL 25 is a registered trademark in the recent past.

70.     Upon information and belief, Defendants deliberately used the "®" symbol to deceive consumers into thinking that they are not purchasing a knock-off or inferior product.

71.     This deception is calculated to further mislead the consuming public thereby providing a further competitive advantage by fraud.

72.      Such improper used of the federal registration symbol constitutes fraud.  *See* TMEP 906.4.

73.     Defendants' false product claims and fraudulent activities pertaining to their D-ANABOL 25 product, as described herein, deceived consumers as to the content, quality, characteristics, and/or ingredients of the D-ANABOL 25 product, and caused and enabled consumers to purchase said product instead of Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

74.     Defendants' false and misleading product claims, as described herein, render the D-ANABOL 25 product "misbranded" and violative of the FDCA.  *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

75.    As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of DNS, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

76.    Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

**B.    DEFENDANTS' FALSE AND MISLEADING ADVERTISING OF DECA 200**

77.    In marketing and advertising the DECA 200 product to consumers on their websites identified herein, Defendants' have made false and misleading claims comparing and/or equating the DECA 200 product to anabolic steroids.

78.    For example, on BuySteroids.com, a website owned and operated by Defendants, Defendants claimed:

> Anabolics have very specific properties, and if your goals include rapidly gaining maximum strength and improved muscularity, then **Deca 200®** is for you! For decades both professional and amateur bodybuilders have used this wildly popular compound to reach optimal strength levels. It's perfect for power crazed athletes of all kinds, but **Deca 200®** (**Nandeconate**) is much more than a one trick pony
> …

***Buy Deca 200® aka Nandeconate at buysteroids.com.***

(http://web.archive.org/web/20140602080600/http://www.buysteroids.com/categor
ies/All-Products/Deca-200, as of at least June 2, 2014) (italics and boldface original).

79.     Defendants' product label for DECA 200 also reads "DECA 200
(nandeconate)".

80.     There is, however, no such chemical as "Nandeconate," rendering this
statement, and the representation that DECA 200 contains 200 milligrams of
"Nandeconate" is false and misleading.

81.     The DECA 200 product does not contain any ingredient called
"Nandeconate."    Defendants simply named the product's proprietary blend
"Nandeconate" to confuse and mislead consumers.

82.     Deca Durabolin (Nandrolone Decanoate) is an anabolic steroid, a
Schedule III drug under the Controlled Substances Act, and a prescription drug
under the FDCA.

83.     Moreover, on Steroid.com, Defendants set forth an extensive
description of the chemical Deca Durabolin with a banner advertising the DECA 200
product offering "Discreet Shipping and Billing … No prescription.  No injections."
Clicking on this banner takes the consumer to Anabolics.com, where Defendants

offer DECA 200 for sale. (https://www.steroid.com/Deca-Durabolin.php, last accessed September 18, 2015).

84.   In making the aforementioned statements, and by using the term "Nandeconate," Defendants were deliberately attempting to deceive consumers into believing that they were purchasing Deca Durabolin (Nandrolone Decanoate) or its equivalent.

85.   Contrary to Defendants' statements and representations stated herein, DECA 200 contains only B vitamins, calcium, a small amount of fruit extract, and a dipeptide with no muscle building effects.

86.   Thus, the DECA 200 product contains no ingredients remotely comparable to Deca Durabolin (Nandrolone Decanoate), and the DECA 200 product could not have any effects equivalent or similar to that of Deca Durabolin (Nandrolone Decanoate), rendering Defendants' statements false and misleading.

87.   Defendants' false product claims and fraudulent activities pertaining to their DECA 200 product, as described herein, deceived consumers as to the content, quality, characteristics, and/or ingredients of the DECA 200 product, and caused and enabled consumers to purchase said product instead of Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

88.    Defendants' false and misleading product claims, as described herein, render the DECA 200 product "misbranded" and violative of the FDCA.  *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

89.    As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of DNS, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

90.    Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

## C.    DEFENDANTS' FALSE AND MISLEADING ADVERTISING OF TREN 75

91.    In marketing and advertising the TREN 75 product to consumers on their websites identified herein, Defendants' have made false and misleading claims comparing and/or equating the TREN 75 product to anabolic steroids.

92.    For example, on BuySteroids.com, a website owned and operated by Defendants, Defendants claimed:

Tren 75® is universally recognized as pound for pound the strongest

muscle building product available! Tren 75 aka Finabolan, possesses
an insanely potent formula that was designed for prompting the release
of high amounts of free testosterone for serious muscle development,
in conjunction with remarkable lipolytic fat burning properties which
unite to provide you with the highest lean quality muscle building
potential of any of our compounds! Numerous additional
characteristics make Tren 75 (Finabolan) the most comprehensive
product on the market …

(http://www.buysteroids.com/categories/All-Products/Tren-75/, as of at least

July 13, 2014).

93.    Defendants' product label for TREN 75 also reads "TREN 75

(finabolon)".

94.    Finabolan (Trebolone Acetate) is an anabolic steroid, a Schedule III

drug under the Controlled Substances Act, and a prescription drug under the FDCA.

95.    Moreover, on Steroid.com, Defendants set forth an extensive

description of the chemical Trenbolone with a banner advertising the TREN 75

product offering "Discreet Shipping and Billing … No prescription.  No injections."

Clicking on this banner takes the consumer to anabolics.com, where Defendants

offer TREN 75 for sale. (http://www.steroid.com/Trenbolone.php, last accessed

September 18, 2015).

96.    In making the aforementioned statement, and by using the term

"Finabolan," Defendants were deliberately attempting to deceive consumers into

believing that they were purchasing Finabolan (Trebolone Acetate) or its equivalent.

24

97.   Upon information and belief, the TREN 75 product contains no ingredients remotely comparable to Finabolan (Trebolone Acetate), and the TREN 75 product could not have any effects equivalent or similar to that of Finabolan (Trebolone Acetate), rendering Defendants' statements false and misleading.

98.   Defendants' false product claims and fraudulent activities pertaining to their TREN 75 product, as described herein, deceived consumers as to the content, quality, characteristics, and/or ingredients of the TREN 75 product, and caused and enabled consumers to purchase said product instead of Hi-Tech's DIANABOL® product.

99.   Defendants' false and misleading product claims, as described herein, render the TREN 75 product "misbranded" and violative of the FDCA.  *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

100.   As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of DNS, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its products.

101.   Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless

Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

### D.   DEFENDANTS' FALSE AND MISLEADING ADVERTISING OF PITUITARY GROWTH HORMONE

102.   In marketing and advertising the Pituitary Growth Hormone product to consumers on their websites identified herein, Defendants' have made false and misleading claims comparing and/or equating the Pituitary Growth Hormone product to anabolic steroids.

103.   For instance, on Anabolics.com, Defendants state:

> **Warning - Professional athletes and others that are tested under the I.O.C. or similar drug testing practices may test positive for sports enhancement drugs with this product.  It is advised that you check with your testing organization's drug policies regarding the use of over the counter supplements before using this product**
> …
>
> Pituitary Growth Hormone™ has been scientifically developed and formulated with precision to implement the benefits of HGH without the annoyance of uncomfortable injections or the horrendous cost!

(http://www.anabolics.com/categories/All-Products/Pituitary-Growth-Hormone/#.Vfx_hbTtJ5g, last accessed September 18, 2015).

104. Moreover, on Steroid.com, Defendants set forth an extensive description of human growth hormone with a banner advertising the Pituitary Growth Hormone product offering "Discreet Shipping and Billing … No

prescription.  No injections."  Clicking on this banner takes the consumer to anabolics.com, where Defendants offer Pituitary Growth Hormone for sale. (https://www.steroid.com/Human-Growth-Hormone.php, last accessed September 18, 2015).

105.   Defendants' product label for the Pituitary Growth Hormone product reads "PITUITARY GROWTH HORMONE (PGH 100mg)", with the words "GROWTH HORMONE" in larger font.

106.   In making these representations, Defendants are deliberately attempting to mislead consumers in to believing they are purchasing human growth hormone (HGH) or its equivalent.

107.   HGH is a naturally occurring hormone secreted by the pituitary gland, and is only available by prescription by a supervising physician for clearly and narrowly defined indications. *See* 21 U.S.C. § 333(e).

108.   Upon information and belief, contrary to Defendants' representations stated herein, the Pituitary Growth Hormone product contains only amino acids not remotely comparable to HGH.

109.   The amino acids in the DECA 200 product could not have any effects equivalent or similar to that of Deca Durabolin (Nandrolone Decanoate), rendering Defendants' statements false and misleading.

27

110.   Defendants' false product claims and fraudulent activities pertaining to their Pituitary Growth Hormone product, as described herein, deceived consumers as to the content, quality, characteristics, and/or ingredients of the Pituitary Growth Hormone product, and caused and enabled consumers to purchase said product instead of Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

111.   Defendants' false and misleading product claims, as described herein, render the Pituitary Growth Hormone product "misbranded" and violative of the FDCA.  *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

112.   As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of DNS, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

113.   Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

### E.   ADDITIONAL FALSE AND MISLEADING ADVERTISING BY DEFENDANTS

114.   Defendants also make several generalized statements which falsely and misleadingly compare and/or equate their products to anabolic steroids and/or HGH.

115.   For example, on Steroid.com, Defendants state:

> Did you know that science has become so advanced that they have created products that mimic anabolic steroids, but have bypassed some countries laws, making them LEGAL?   Steroid alternatives can provide a similar effect to anabolic steroids, but is legal because they do not convert to testosterone or hormones until they are ingested into the body! You get the same type of results with steroid alternatives as you do with anabolic steroids, but they are legal and cheaper!

(http://www.steroid.com/legal_steroid_alternatives.php, last accessed September 18, 2015).

116.   Underneath this statement, Defendant offers several of its products for sale including, but not limited to, D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone.  (*Id.*)

117.   On BuySteroids.com, a website owned and operated by Defendants, Defendants offered their "Mass Stack" package for sale stating:

> Immediately benefit from this conveniently potent, oral anabolic cycle which includes DECA 200, D-ANABOL 25, and TREN 75! These compounds are often googled under the names: Deca-Durabolin, Deca, or Deca-Dura; Dianabol, D-bol, DeBol, or Dbol and; Trenbolone, Tren, Finaplex, Finajet, or Fina.

(http://www.buysteroids.com/categories/Popular-Stacks/Mass-Stack/, as of at least July 14, 2014).

118.   Thus, as set forth herein, Defendants are falsely and misleadingly representing that the subject products are the comparable and/or the equivalent to anabolic steroids.

119.   Defendants' false and misleading product claims, as described herein, render the D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products "misbranded" and violative of the FDCA.  *See* 21 U.S.C. §§ 331(a) & 343(a); *Kordel v. U.S.*, 335 U.S. 345 (1948).

120.   On OralSteroids.com, a website owned and operated by Defendants, Defendants stated, "[w]e take pride in our quality anabolic products, which are only manufactured in the highest quality FDA approved facilities and use only 100% pharmaceutical grade ingredients." (https://web.archive.org/web/20131123040146/http://www.oralsteroids.com/pages/About-Us#.VgRQkbTtJ5g, as of at least November 23, 2013.

121.   In making this statement, Defendants are falsely and misleadingly representing that their products are pharmaceuticals (*i.e.* anabolic steroids) as opposed to simply dietary supplements.

122.   Defendants' false product claims and fraudulent activities described herein deceived consumers as to the content, quality, characteristics, and/or ingredients of D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products, and caused and enabled consumers to purchase said products instead of Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, and Somatomax products.

123.   Indeed, Defendants' even selected their domain names to intentionally deceive and mislead consumers into associating and/or equating D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products with anabolic steroids (*e.g.* Anabolics.com, Steroid.com, BuySteroids.com, OralSteroids.com, and RoidStore.com).

124.   As set forth herein, Defendants have made, and continue to make, statements in violation of 21 U.S.C. §§ 331(a) & 343(a) with respect to their D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products.  To the extent Defendants' misbranding in violation of these Sections render the aforementioned products "drugs" and "new drugs" as defined by 21 USC 321(g) & (p), Defendants have illegally introduced "new" and "misbranded" drugs into interstate commerce in violation of 21 U.S.C. §§ 331(d), 352, and 355(a).

125.   In committing these violations, Defendants have gained an improper competitive advantage and sell, and have sold, the D-ANABOL, DECA 200, TREN

31

75, and Pituitary Growth Hormone products in a deceptive and uncompetitive manner.

126.   As a direct and proximate cause of Defendants' false and misleading representations set forth herein, Hi-Tech, a competitor of DNS, sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and in the goodwill of its products.

127.   Hi-Tech has been irreparably harmed to an extent not yet determined and will continue to be irreparably damaged by such acts in the future unless Defendants are preliminarily and permanently enjoined by this Court from making further false and misleading representations.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

### *Against DSN*

128.   Hi-Tech incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein.

129.   Hi-Tech's incontestable DIANABOL® trademark, and the goodwill and brand of the business associated with it, are of great and incalculable value, are highly distinctive and not subject to attack, and have become universally associated

in the public mind with the products and services of the highest quality and reputation emanating from Hi-Tech.

130.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, DSN advertised, marketed, and offered for sale and/or sold the Infringing Products in or affecting interstate commerce under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

131.   DSN used the D-ANABOL 25 trademark as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

132.   DSN's use of the D-ANABOL 25 trademark  on identical or substantially similar goods marketed and distributed by Defendants is likely to cause confusion, mistake, and deception of this behavior.

133.   DSN's aforesaid activities constitute infringement of Hi-Tech's federally registered trademark pursuant to 15 U.S.C. §1114.

134.   DNS has engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

135.   The unlawful and willful conduct of DSN has caused and is causing Hi-Tech irreparable injury and monetary damages.

136.   In accordance with 15 U.S.C. § 1117(a) Hi-Tech should be awarded its actual damages, costs and attorney's fees, and Defendants' profits derived from its infringing activities.   If this Court determines that DNS has engaged in these infringing activities knowingly and willfully, then Hi-Tech should be awarded three times Defendants' profits from its unlawful activities.

137.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

## COUNT II

### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

### *Against Mr. Clapp*

138.   Hi-Tech incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein.

139.   Hi-Tech's incontestable DIANABOL® trademark, and the goodwill and brand of the business associated with it, are of great and incalculable value, are highly distinctive and not subject to attack, and have become universally associated

in the public mind with the products and services of the highest quality and reputation emanating from Hi-Tech.

140.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, Mr. Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind DSN's advertisement, marketing, and offering for sale of the Infringing Products under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

141.   Defendants used the name DIANABOL® as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

142.   Defendants' use of the D-ANABOL 25 trademark  name on identical or substantially similar goods marketed and distributed by Defendants is likely to cause confusion, mistake, and deception as to the source of their DIANABOL® product.

143.   Defendants' aforesaid activities constitute infringement of Hi-Tech's federally registered trademark pursuant to 15 U.S.C. §1114.

144.   Upon information and belief, Mr. Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind all of the foregoing activities and is thus liable under the Lanham Act.

145.   Clapp has engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

146.   The unlawful and willful conduct of the Defendants has caused and is causing Hi-Tech irreparable injury and monetary damages.

147.   In accordance with 15 U.S.C. § 1117(a) Hi-Tech should be awarded its actual damages, costs and attorney's fees, and Defendants' profits derived from its infringing activities.  If this Court determines that Defendants have engaged in these infringing activities knowingly and willfully, then Hi-Tech should be awarded three times Defendants' profits from its unlawful activities.

148.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

## COUNT III

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

**UNDER 15 U.S.C. § 1125(a)**

***Against DSN***

149.   Hi-Tech incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein.

150.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, DSN advertised, marketed, and offered for sale and/or sold the Infringing Products in or affecting interstate commerce under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

151.   DSN used the D-ANABOL 25 trademark as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

152.   DSN's adoption and use of D-ANABOL 25, which is confusingly similar Hi-Tech's DIANABOL®, is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that DSN's products are the same

as Hi-Tech's products or that DSN's products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Hi-Tech.

153.   DNS' conduct constitutes unfair competition and introduction into commerce of a false designation of origin, or false description or representation of the origin or sponsorship of its product in violation of 15 U.S.C. § 1125(a).

154.   DNS has engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

155.   The unlawful and willful conduct of DSN has caused and is causing Hi-Tech irreparable injury and monetary damages.

156.   In accordance with 15 U.S.C. § 1117(a) Hi-Tech should be awarded its actual damages, costs and attorney's fees, and Defendants' profits derived from its infringing activities.   If this Court determines that DNS has engaged in these infringing activities knowingly and willfully, then Hi-Tech should be awarded three times Defendants' profits from its unlawful activities.

157.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' activities will continue unless enjoined by this Court.

## COUNT IV

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

**UNDER 15 U.S.C. § 1125(a)**

*Against Mr. Clapp*

158.   Hi-Tech incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein.

159.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, Defendants advertised, marketed, and offered for sale and/or sold the Infringing Products in or affecting interstate commerce under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

160.   Defendants used the D-ANABOL 25 trademark as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

161.   Defendants' adoption and use of D-ANABOL 25, which is confusingly similar Hi-Tech's DIANABOL®, is likely to cause confusion, mistake, or to deceive purchasers and potential purchasers into believing that Defendants products are the

same as Hi-Tech's products or that DSN's products and services are in some way affiliated with, sponsored, authorized, approved, sanctioned, or licensed by Hi-Tech.

162.   Defendants' conduct constitutes unfair competition and introduction into commerce of a false designation of origin, or false description or representation of the origin or sponsorship of its product in violation of 15 U.S.C. § 1125(a).

163.   Upon information and belief, Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the foregoing activities, in violation of the Lanham Act.

164.   Defendants have engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

165.   The unlawful and willful conduct of Defendants has caused and is causing Hi-Tech irreparable injury and monetary damages.

166.   In accordance with 15 U.S.C. § 1117(a) Hi-Tech should be awarded its actual damages, costs and attorney's fees, and Defendants' profits derived from its infringing activities.  If this Court determines that Defendants have engaged in these infringing activities knowingly and willfully, then Hi-Tech should be awarded three times Defendants' profits from its unlawful activities.

167.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' activities will continue unless enjoined by this Court.

## COUNT V

## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

### *Against Mr. Clapp and DSN*

168.   Hi-Tech incorporates by reference Paragraphs 1 through 127 above as though fully set forth herein.

169.   Defendants have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products.

170.   The use of such false and misleading descriptions of fact has actually deceived or has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.  By failing to accurately describe the product and its ingredients prominently on their websites, Defendants have misled consumers.

171.   Defendants' false and misleading descriptions of fact are material and are likely to influence purchasing decisions of the D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products.

172.   Defendants have introduced their false statements into interstate commerce via marketing and advertising on various websites and shipment of its product into interstate commerce containing false advertising.

173.    Hi-Tech has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendant and the loss of goodwill in Hi-Tech's products.  Indeed, Defendants' conduct is a black eye on Hi-Tech and the dietary supplement industry as a whole, and has the tendency to disparage Hi-Tech's products and goodwill.

174.    Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, ability to compete, and goodwill in its DIANABOL® trademark for which there is no adequate remedy at law.  Hi-Tech, therefore, is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further actions of false advertising, and ordering removal of all Defendants' false advertisements.

175.  Pursuant to 15 U.S.C. § 1117, Hi-Tech is entitled to recover from Defendants damages in addition to Defendants' gains, profits, and advantages that they have obtained as a result of their acts set forth herein.  Plaintiff is at present unable to ascertain the full extent of monetary damages it has sustained by reason of Defendants' acts.

176.   Moreover, Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, entitling Plaintiff to recover additional damages and reasonable attorney fees.

## COUNT VI

## VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT, O.C.G.A. §10-1-372(a)

### *Against DSN and Clapp*

177.   Hi-Tech incorporates by reference Paragraphs 1 through 127 above as though fully set forth herein.

178.   Hi-Tech's incontestable DIANABOL® trademark, and the goodwill and brand of the business associated with it, are of great and incalculable value, are highly distinctive and not subject to attack, and have become universally associated in the public mind with the products and services of the highest quality and reputation emanating from Hi-Tech.

179.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, Defendants advertised, marketed, and offered for sale and/or sold the Infringing Products under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

43

180.   Defendants used the D-ANABOL 25 trademark as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

181.   Defendants have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products as set forth herein.

182.   The use of such false and misleading descriptions of fact has actually deceived or has the tendency to deceive a substantial segment of the public into believing that they are purchasing a product with different characteristics.  By failing to accurately describe the product and its ingredients prominently on their websites, Defendants have misled consumers.

183.   Defendants' false and misleading descriptions of fact are material and are likely to influence purchasing decisions of the D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products.

184.   Upon information and belief, Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the foregoing activities.

185.   DSN's use of the infringing D-ANABOL 25 trademark on identical or substantially similar goods marketed and distributed by Defendants is passing off their Infringing Products as those of Hi-Tech, in violation of O.C.G.A. 10-1-372 (a)(1).

186.   Defendants' use of the infringing D-ANABOL 25 trademark on identical or substantially similar goods marketed and distributed by Defendants causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods, in violation of O.C.G.A. 10-1-372 (a)(2).

187.   Defendants' use of the infringing D-ANABOL 25 trademark on identical or substantially similar goods marketed and distributed by Defendants causes a likelihood of confusion or misunderstanding as to affiliation, connection or association with Hi-Tech's products, in violation of O.C.G.A. 10-1-372 (a)(3).

188.   Defendants' false advertising uses deceptive representations in violation of O.C.G.A. 10-1-372 (a)(4).

189.   Defendants' use of the infringing D-ANABOL 25 trademark on identical or substantially similar goods marketed and distributed by Defendants and false advertising represents that their goods have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have in violation of O.C.G.A. 10-1-372 (a)(5).

190.   Defendants' false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products results in a representation that their goods are of a particular standard, quality, or grade in violation of O.C.G.A. 10-1-372 (a)(7).

191.    Defendants' false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products advertise their goods with an intent not to sell them as advertised in violation of O.C.G.A. 10-1-372 (a)(9).

192.   Defendants' actions create a likelihood of confusion or of misunderstanding in the consuming public, in violation of O.C.G.A. 10-1-372 (a)(12).

193.   The unlawful and willful conduct of DSN has caused and is causing Hi-Tech irreparable injury and monetary and non-monetary damages.

194.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

## COUNT VII

## GEORGIA UNFAIR COMPETITION

### *Against DSN and Clapp*

195.   Hi-Tech incorporates by reference Paragraphs 1 through 127 above as though fully set forth herein.

196.   Hi-Tech's incontestable DIANABOL® trademark, and the goodwill and brand of the business associated with it, are of great and incalculable value, are highly distinctive and not subject to attack, and have become universally associated in the public mind with the products and services of the highest quality and reputation emanating from Hi-Tech.

197.   Without Hi-Tech's authorization or consent, and having knowledge of Hi-Tech's well-known and prior rights in the DIANABOL® trademark, Defendants advertised, marketed, and offered for sale and/or sold the Infringing Products in or affecting interstate commerce under the infringing D-ANABOL 25 trademark to the consuming public in direct competition with Hi-Tech.

198.   Defendants used the D-ANABOL 25 trademark as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Hi-Tech and symbolized by Hi-Tech's DIANABOL® trademark and brand.

199.   Defendants' use of the D-ANABOL 25 trademark on identical or substantially similar goods marketed and distributed by Defendants is likely to cause confusion, mistake, and deception of this behavior.

200.   As set forth herein, Defendants' made false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products in order to improperly gain a competitive advantage.

201.   Upon information and belief, Clapp authorized, participated in, directed, controlled, caused, ratified, and/or was the moving force behind or otherwise participated in the foregoing activities.

202.   Defendants' aforesaid activities unfair competition, in violation of Georgia unfair common law.

203.   Defendants have engaged in this activity knowingly, willfully, with actual malice, and in bad faith.

204.   The unlawful and willful conduct of DSN has caused and is causing Hi-Tech irreparable injury and monetary damages.

205.   Hi-Tech is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

206.   Defendants' acts entitle Hi-Tech to both compensatory damages in an amount to be determined at trial and punitive damages under the common law and O.C.G.A. § 51-12-5.1.

## COUNT VIII

### GEORGIA RICO CLAIM
### VIOLATION OF O.C.G.A. § 16-14-4(a)

#### *Against Clapp and DSN*

207.   Hi-Tech incorporates by reference Paragraphs 1 through 206 above as though fully set forth herein.

208.   Mr. Clapp is a "person" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-1, *et seq.*

209.   DNS is a "person" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-1, *et seq.*

210.   DNS is an "enterprise" within the meaning of the Georgia RICO Law. O.C.G.A. § 16-14-3(6).

211.   Mr. Clapp is employed by or associated with the DNS within the meaning of the Georgia RICO Law.  O.C.G.A. §16-14-4(b).

212.   In committing the acts described above, the Defendants, and their officers, agents, and employees repeatedly acted in furtherance of an unlawful scheme and endeavor, that was continuously executed by them throughout a time

period from on or about a date unknown but at least in or about 2005, and continuing through the current date.

213.   From on or about a date unknown but at least in or about 2005, and continuing through the current date, the Defendants herein did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

214.   The unlawful scheme included a scheme or artifice to defraud Hi-Tech out of sales and profits through infringement of Hi-Tech's DIANABOL® trademark, thereby falsely designating the origin of the D-ANABOL 25 and diverting and/or confusing purchasing consumers.

215.   The unlawful scheme included a scheme or artifice to defraud Hi-Tech out of sales and profits through false and misleading descriptions of fact concerning the nature, characteristics and qualities of its D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth Hormone products.

216.   In committing the acts described above, Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly acted in furtherance of the unlawful scheme through a pattern of racketeering activity.

217.   Defendants, their co-conspirators currently unknown to Hi-Tech, and their officers, agents, and employees, repeatedly caused letters, packages, and other matters and things to be deposited with and delivered by the United States Postal Service and/or interstate couriers to each other and others in repeated violation, or attempted violation, of 18 U.S.C. § 1341 (mail fraud).   Defendants specifically used the the United States Postal Service and/or interstate couriers to ship the D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone products to purchasing consumers throughout the United States.

218.   To the extent that either of the Defendants did not participate directly in these acts of mail fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1341 and in violation of O.C.G.A. § 16-2-20.

219.   Defendants, and their officers, agents, and employees, could reasonably foresee the uses of the United States Postal Service and interstate couriers in connection with the execution of these unlawful schemes.   All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.   In this regard, the Defendants, to include

individual defendants, corporations and law firms have purposely directed tortious and fraudulent conduct toward the State of Georgia and Hi-Tech.

220.   Each of these "mailings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. §§ 16-14-3(4)(A) and (5)(C).

221.   In furtherance of these unlawful schemes, and for the purpose of executing, and attempting to execute these schemes, Defendants and their officers, agents, and employees, repeatedly utilized the internet and email communications, in repeated violation, or attempted violation, of 18 U.S.C. § 1343 (wire fraud). Defendants specifically used the internet and email communication to electronically disseminate its infringing D-ANABOL 25 trademark and to enable the online purchase of D-ANABOL, DECA 200, TREN 75, and Pituitary Growth Hormone by consumers throughout the United States.

222.   To the extent that any of the Defendants did not participate directly in these acts of wire fraud, they knowingly and willfully caused, aided, abetted, advised, encouraged, hired, counseled, commanded, induced or procured another to commit these violations of 18 U.S.C. § 1343 in violation of O.C.G.A. § 16-2-20.

223.   Each of the Defendants and their officers, agents, and employees, could reasonably foresee the uses of the interstate wire communications in connection with

the execution of these unlawful schemes.  All of these acts constitute "intangible contacts" with the State of Georgia designed to further all of the violations alleged in this Complaint.  In this regard, the Defendants, to include individual defendants, corporations and law firms have purposely directed tortuous and fraudulent conduct toward the State of Georgia and Hi-Tech.

224.   Each of these "interstate wirings" constitutes a separate racketeering act in furtherance of the fraudulent schemes which constitute a pattern of "racketeering activity" under Georgia RICO as specified in O.C.G.A. § 16-14-3(4)(A) and 5(C).

225.   Each of these acts of racketeering activity was authorized, requested, commanded, performed, or recklessly tolerated by Defendant Clapp, and was done in furtherance of the execution of the unlawful schemes designed to to defraud Hi-Tech out of sales and profits.

226.   Hi-Tech anticipates that in furtherance of the execution of this unlawful scheme, Defendants and their officers, agents, and employees will violate the perjury and false swearing statutes of this state, O.C.G.A. §§ 16-10-70 (perjury) and 16-10-71 (false swearing) in addition to the federal statutes 18 U.S.C. §§ 1621 (perjury) and 1001 (false statements).  Each violation of these statutes constitutes, or will when committed constitute, an additional separate incident of racketeering under Georgia RICO.

227.   The multiple acts of racketeering activity by the Defendants and their officers, agents, and employees were interrelated, were and are part of a common and continuous pattern of racketeering activity to include fraudulent acts and schemes, which were and are acts perpetrated for the same or similar purposes, and were and are not a series of disconnected, isolated or sporadic acts.  These acts were and are part of the regular and routine way the Defendants conduct their business. The multiple racketeering acts by the Defendants and their officers, agents, and employees constitute a "pattern of racketeering activity" as defined in O.C.G.A. § 16-14-3(4)(A) and (5).

228.   By reason of the foregoing, the Defendants, and their officers, agents, and employees, directly and indirectly, acquired or maintained control of property, *i.e.* profits diverted from Hi-Tech as well as profits which were generated by virtue of the mail and wire fraud executed against Hi-Tech, through a pattern of racketeering activity in violation of the Georgia RICO Act (O.C.G.A. § 16-14-4(a)).

229.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(a) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT IX

**GEORGIA RICO CLAIM**
**VIOLATION OF O.C.G.A. § 16-14-4(b)**

*Against Clapp and DSN*

230.   Hi-Tech incorporates by reference Paragraphs 1 through 229 above as though fully set forth herein.

231.   By reason of the foregoing, the Defendants and their managerial officials, agents, and employees, have unlawfully, knowingly and willfully conducted and participated in, directly or indirectly, the affairs of DSN through a pattern of racketeering activity in violation or attempted violation of O.C.G.A. § 16-14-4(b).

232.   As a direct and proximate result of these violations of O.C.G.A. §16-14-4(b) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## COUNT X

**GEORGIA RICO CLAIM**
**VIOLATION OF O.C.G.A. § 16-14-4(c)**

*Against Clapp and DSN*

233.   Hi-Tech incorporates by reference Paragraphs 1 through 232 above as though fully set forth herein.

234.    By reason of the foregoing circumstances and events, Defendants individually and collectively knowingly and willfully, combined, colluded, conspired, attempted, endeavored, and continue to combine, collude, conspire, and endeavor, to violate the provisions of O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c).

235.    Defendants committed overt acts and preparatory acts to effect the objects of the conspiracy or endeavor as specified in all of the paragraphs preceding this Count.  Each of these overt or preparatory acts is a racketeering act.  O.C.G.A. § 16-14-3(5).

236.    As a direct and proximate result of these violations of O.C.G.A. § 16-14-4(c) by Defendants, and their managerial officials, agents, and employees, Hi-Tech has been injured and damaged as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Hi-Tech prays for judgment against Defendants as follows:

1.    That DSN be adjudged to have violated 15 U.S.C. §1114 by infringing on Hi-Tech's incontestable DIANABOL® trademark by virtue of their use of D-ANABOL 25 trademark.

2.     That Mr. Clapp be adjudged to have violated 15 U.S.C. §1114 by directing the infringement of Hi-Tech's incontestable DIANABOL® trademark by virtue of their use of D-ANABOL 25 trademark.

3.     That DSN be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the DSN's products.

4.     That Mr. Clapp be adjudged to have violated 15 U.S.C. §1125(a) by unfairly competing against Hi-Tech by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the DSN's products.

5.     That Defendants have disseminated false and misleading descriptions of fact concerning the nature, characteristics, and qualities of their D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth Hormone products in interstate commerce.

6.     That Hi-Tech be awarded damages Hi-Tech has sustained as a consequence of Defendants' conduct.

7.     That Hi-Tech be awarded Defendants' profits obtained by Defendants as a consequence of Defendants' conduct.

8.     That such damages and profits be trebled and awarded to Hi-Tech as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act.

9.     That Plaintiff be entitled to its attorney fees under 15 U.S.C. § 1117, as Defendants' conduct described herein is "exceptional."

10.     That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118.

11.     That Defendants be ordered to engage in corrective advertising related to their false and misleading descriptions concerning the nature, characteristics, and qualities of their D-ANABOL 25, DECA 200, TREN 75, and Pituitary Growth Hormone products.

12.     That the Court adjudge and decree that Hi-Tech is the exclusive owner of the incontestable trademark DIANABOL® associated with dietary supplement products.

13.     For preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants from using the D-ANABOL 25 name or logo, or any other term, trade name, trade dress, trademark, or service mark confusingly similar to Hi-Tech's

DIANABOL® trademark in connection with Defendants' products, including any packaging and promotional materials.

14.    For an order requiring Defendants to deliver up for destruction all tangible items bearing the D-ANABOL 25 name, including without limitation, the following: labels, packaging, brochures, flyers, advertisements, and signs (and to recall for such purpose any such products and materials in the possession, custody, or control of any other person or entity) and to remove any references to the D-ANABOL 25 name from the Internet.

15.    That DSN be adjudged to have unlawfully and unfairly competed against Hi-Tech under the laws of the State of Georgia, §10-1-372 (a).

16.    That judgment be against Defendants for such sums as compensatory damages, trebled, as the evidence shall show the Defendants to be justly entitled to recover pursuant to O.C.G.A. § 16-14-6(c), as well as punitive damages for deterrence in an amount sufficient to keep such wrongful conduct from being repeated, attorney's fees and litigation expenses, interest, if applicable, and all costs of this action.

17.    That this Court enter any orders or judgments against any or all of the Defendants as are authorized in O.C.G.A. §16-14-6(a).

18.    That Hi-Tech recover punitive damages as provided by law.

19.     That Hi-Tech recover its costs and reasonable attorney fees.

20.     That Hi-Tech be granted prejudgment and post judgment interest.

21.     That Hi-Tech have such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Hi-Tech requests a trial by jury on all issues so triable.

Dated: September 28, 2015

Respectfully submitted,

*/s/ Arthur W. Leach*
Arthur W. Leach
Georgia Bar No. 442025
C.L. Parker
Georgia Bar No. 722011
*Counsel for Plaintiff Hi-Tech*
*Pharmaceuticals, Inc.*

The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Tel: 404-786-6443
Fax: 678-624-9852
 Art@ArthurWLeach.com

CL@clparkerllc.com

/s/ Erica W. Stump
Erica W. Stump, Esq.
(Florida Bar No. 427632)
(motion for pro hac vice to be filed)
*Counsel for Hi-Tech Hi-Tech*
*Pharmaceuticals, Inc.*

ERICA W. STUMP, P.A.
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
Telephone: (954) 828-2334
Facsimile: (954) 278-8510
Electronic Mail: erica@ericawstump.com